UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KENNETH ADAMSON, )
)
Plaintiff, )
) CIVIL ACTION NO.:
v. )
)
WYETH PHARMACEUTICALS f/k/a, ) 04cv11623DPW
WYETH-AYERST PHARMACEUTICALS )
and ROBERT WINTERS, )
)
Defendants. )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

Defendants Wyeth Pharmaceuticals ("Wyeth") and Robert Winters ("Winters") (collectively the "Defendants") submit this Memorandum of Law in Support of their Partial Motion to Dismiss specific allegations contained in the Complaint filed by Plaintiff Kenneth Adamson ("Adamson" or "Plaintiff"). The basis for Defendants' motion is two-fold: (1) because Plaintiff has failed to exhaust his administrative remedies, Defendants seek dismissal of the allegations contained in Paragraph 1 regarding retaliation; and (2) because Plaintiff's allegations contained in Paragraphs 7 and 11 through 17 of the Complaint fall outside of the applicable statute of limitations, Defendants seek dismissal of those paragraphs of the Complaint.

## STATEMENT OF FACTS

Plaintiff initiated the underlying action by filing a Charge with the Massachusetts Commission Against Discrimination ("MCAD") on April 24, 2002. The Complaint herein, similar to the Charge below, alleges that Wyeth and/or Winters discriminatorily failed to hire him for a "permanent managerial or other suitable professional position" for reasons relating

1

solely to his race and color. (Complaint ¶ 1). Plaintiff's Complaint now asserts a retaliation claim, which was never raised at the administrative level as required by M.G.L. c. 151B § 5. (Complaint ¶ 1).

In support of his claims, Plaintiff asserts four unrelated instances of purported discriminatory treatment:

1. In 1998, approximately four years before he filed his Charge with the MCAD, Plaintiff applied for a "Pharmaceutical Representative" position with some unknown individual somewhere at Wyeth (Complaint ¶ 7);
2. In March of 2001, about three years after his first allegation, Plaintiff alleges that he was not informed of possible openings by Wyeth or his actual employer, Innovex. As a result, Plaintiff alleges that he was not considered by Winters for a position in Area 11[1/], but that upon learning this, Winters said that he would consider Plaintiff for future openings (Complaint ¶¶ 4, 11-15);
3. Also in March 2001, Plaintiff interviewed for an area marketing position with an entirely separate department at Wyeth located in Philadelphia, Pennsylvania, and was not offered the job (Complaint ¶ 16);
4. In December 2001, Winters interviewed Plaintiff for a position as District Manager, but he was not hired for that position (Complaint ¶ 19).

However, three out of the four incidents are time-barred because they fall well outside the applicable six-month statute of limitations. In an obvious attempt to side-step the statute of limitations, Plaintiff asserts, without any substantive allegations, that Defendants' decision not to hire him for various positions over the course of four years represents a "pattern and practice" of discrimination. In this case, the continuing violations theory does not apply.

## ARGUMENT

### I  PLAINTIFF'S RETALIATION CLAIM MUST FAIL BECAUSE HE DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES

In Paragraph 1 of the Complaint, Plaintiff alleges that Defendants engaged in retaliatory conduct, among other things, when they failed to hire him. Plaintiff's MCAD charge, however,

---

[1/] Winters is the Area Business Director for Area 11, a region comprised of Massachusetts, New Hampshire, Rhode Island, Vermont and Maine.

is devoid of any mention of purported retaliation.[2/] In addition, Plaintiff did not check the "retaliation" box on his MCAD charge form. Massachusetts law requires that prior to the commencement of an action in any court, a plaintiff must first file an administrative charge with the MCAD. *See M.G.L. c. 151B §5 -9.* The filing of an administrative charge is an absolute prerequisite to bringing an action in court and is not satisfied by a charge alleging some of the same allegations. *See Lattimore v. Polaroid corp.*, 99 F.3d 456, 461-63 (1st Cir. 1996). *See also Valls v. Geon Engineered Films, Inc.*, 17 Mass. L. Rptr. 699 (Mass. Super. 2004) (declining to include purported related charges for the purposes of exhausting administrative remedies, where the plaintiff did not allege or even check the appropriate box on his MCAD charge).

The Plaintiff in *Lattimore* sued his former employer for race discrimination and asserted additional allegations in his complaint beyond what he had alleged in his administrative charge before the MCAD. *Id.* In granting judgment in favor of the defendant, the *Lattimore* court held that the "purpose [of the administrative requirement] would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." *Id.* at 464.

Because Adamson failed to exhaust his administrative remedies by asserting a retaliation claim in his MCAD Charge, the claim must be dismissed.

## II    PLAINTIFF'S CLAIMS PRIOR TO OCTOBER 26, 2001 ARE TIME-BARRED

The majority of Plaintiff's allegations are time-barred due to his failure to meet the statutory requirement that he file a charge within six months of any alleged act of discrimination. *See M.G.L. c. 151B §5; Brissette v. Franklin Cty. Sheriff's Office,* 235 F.Supp.2d 63, 86 (D.Mass. 2003); *Ocean Spray v. Mass. Comm. Against Discrimination,* 441 Mass. 632, 641

---

[2/]    A copy of Plaintiff's MCAD Charge is attached hereto as Exhibit A.

(2004). Three out of four incidents of alleged discrimination fall outside of the applicable six-month limitations period. Therefore, those allegations must be dismissed as untimely.

### A. *The Continuing Violations Exception Does Not Apply To Discrete Acts*

In order to defeat the six-month statutory limitations requirement, Adamson must allege that discrete acts are part of a "pattern and practice" of discrimination or a hostile work environment existed at Wyeth. *See Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521 (2001). However, both Massachusetts state and federal courts recognize that certain employment actions such as "termination, failure to promote, or refusal to hire are easy to identify" and constitute discrete acts. *See AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002); *Rivera v. Puerto Rico Aqueduct*, 331 F.3d 183, 188 (1st Cir. 2003); *Morrison v. N. Essex Community College*, 56 Mass. App. Ct. 784, 794 (2002) (*quoting Morgan*). Here, Plaintiff's allegations -- 4 incidents where he asserts Defendants discriminatorily refused to hire him over the course of a four-year period -- do not suggest a hostile-work environment or "pattern and practice" of discrimination sufficient to create a continuing violation under Massachusetts law.

In *Cuddyer*, the Supreme Judicial Court recognized a continuing violation exception to the six-month limitations period for claims where a hostile work environment constitutes a pattern and practice of discrimination. *Cuddyer*, 434 Mass. at 538. To bring the discrete acts that Plaintiff alleges here within the auspices of a continuing violation, he must allege a hostile work environment, such that "the true character and enormity of the discriminatory environment" would not have been apparent from the discrete acts. *See Cuddyer*, 434 Mass. at 538 ("A hostile work environment constitutes a pattern of sexual harassment (these are operative words) that, by its very nature, often is apparent only in hindsight."). *See also AMTRAK v.*

4

*Morgan*, 536 U.S. 101, 122 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct").

The plaintiff in *Cuddyer* alleged many instance of discrimination or harassing conduct, including: sexual harassment by multiple supervisors and coworkers in the workplace; multiple incidents of inappropriate touching; requests to kiss her; sexual gestures; and a failure to appropriately respond to her complaints over the course of an eight-year period. *Cuddyer*, 434 Mass. at 523-25. Likewise, in *Morgan*, the plaintiff put forth allegations of discriminatory acts such as excessive discipline, the use of racial epithets in the workplace, managers making racial jokes and openly questioning the capacity of blacks to be supervisors, and ultimately a wrongful termination, which the Court held might support evidence of a hostile work environment. *Id.* at 120.

Here, Adamson's allegations are insufficient as a matter of law to establish a continuing violation. *See Cuddyer* 434 Mass. at 531 ("This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact."). As a threshold matter, Adamson's discrimination claim is not rooted in a purported hostile work environment. In direct contrast to the plaintiff in *Cuddyer*, Adamson has alleged four distinct and discrete acts, which purportedly occurred over four years: a failure to hire in 1998 by an unidentified person at Wyeth; a failure by both his employer, Innovex, and Wyeth to inform him of and consider him for a job opening three years later in March 2001; a failure to hire by an unrelated person in Wyeth's Marketing Department that same month; and a failure to hire in December 2001 by Winters, who asked that Plaintiff interview for an alternative position instead. At the same time, Adamson does not identify any of the hostile work environment indicia enunciated in *Morgan*. *Morgan*, 536 U.S. at

5

116 (holding that whether a hostile work environment exists requires examination of "all of the circumstances ... including, the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance.") (internal quotations omitted). Adamson does not assert that others were subjected to discriminatory conduct or that discrimination permeated the workplace. *Id.* at 541 (noting that discriminatory acts directed at others but known to a plaintiff could be considered in evaluation of whether a hostile work environment exists).

Plaintiff does not plead a "pattern and practice" claim either. Adamson asserts on "information and belief" that Defendants have "engaged in a pattern and practice of failing to hire and/or promote African-American and other qualified minorities for professional positions in pharmaceutical sales and marketing." (Complaint ¶ 28). However, Plaintiff's use of the terms "pattern and practice" to characterize his allegations, without more, does not "convert related discrete acts into a single unlawful practice for the purposes of a timely filing." *See Morgan*, 536 U.S. at 110-11.

Because Plaintiff's allegations fail to support a "pattern and practice" claim or hostile work environment, the continuing violation doctrine is inapplicable. Therefore, any allegations of discriminatory conduct beyond October 26, 2001 are untimely.

**B.   *Because the Alleged Instances of Discrimination Are Substantially Different and Not Close in Time, They Cannot Support a Continuing Violation Theory***

Plaintiff's claims prior to October 26, 2001 also fail to establish a continuing violation because they are "different in kind and not close enough in time to be substantially related sufficient to demonstrate a continuing violation." *See Brienzo v. Town of Acushnet*, 15 Mass. L. Rep. 142, 2002 Mass. Super. LEXIS 266 at *33 (Mass. Super. August 27, 2002). In *Brienzo*, the

plaintiff sued his employer alleging a continuing violation for their failure to accommodate his request to return to work in 1995 because of the lack of light duty work and again in 1998 because there was no open full-time position available – two allegations of a similar result but with substantially different underlying factors.

The *Brienzo* court, in applying the continuing violation standard developed in *Cuddyer*, held that the allegations which were three years apart and involved different circumstances, were not substantially related enough to demonstrate a continuing violation. *Brienzo*, 2002 Mass. Super. LEXIS 266 (Mass. Super. August 27, 2002). *See also Dubose v. Mass. Bay Transportation Authority*, 2002 Mass. Comm. Discrim. LEXIS 80 at * 15 (MCAD August 16, 2002) (finding that a claim for an earlier failure to hire was a discrete act which could not be part of a continuing violation because "there is no evidence of a series of events tying it to subsequent acts of alleged discrimination to bring it within the six months statute of limitations."); *Klaus v. Amherst Fire Dept.*, 22 MDLR 164, 2000 Mass. Comm. Discrim. LEXIS 86 at *21 (MCAD June 28, 2000) (finding no continuing violation where there was "too long a break [two years] to make the untimely violations substantially related to the timely violations" even though the acts were related as to subject matter).

This "failure to hire" case involves four different openings over the course of almost four years: (1) a 1998 Pharmaceutical Representative position; (2) a March 2001 marketing position; (3) a March 2001 District Manager opening; and (4) a December 2001 District Manager position for a different region. Here, Plaintiff's claims are not sufficiently related in time or type to demonstrate a continuing violation. *Id.*

## **CONCLUSION**

Plaintiff failed to allege retaliation at the administrative level and, therefore, his retaliation claim must fail. Moreover, the continuing violation doctrine does not apply; any allegations occurring prior to October 26, 2001 are time-barred by the applicable six-month statute of limitations.

Respectfully submitted,

WYETH PHARMACEUTICALS
and ROBERT WINTERS

By their attorneys,

*/s/ Donald W. Schroeder*

Donald W. Schroeder, BBO #646700
Mintz, Levin, Cohn, Ferris, Glovsky,
  and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Dated: July 28, 2004

LIT 1471177v4