UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
KENNETH ADAMSON                     )
    Plaintiff                       )
                                    )
    v.                              )
                                    )
WYETH PHARMACEUTICALS f/n/a         )   C.A. NO. 04-CV-11623-DPW
WYETH-AYERST PHARMACEUTICALS)
    Defendant                       )
                                    )
ROBERT WINTERS                      )
    Defendant                       )
_____)

PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' PARTIAL MOTION TO DISMISS

COMES now Kenneth Adamson, plaintiff in the above-captioned matter ("Plaintiff" or "Adamson"), and, pursuant to LR. 7.1(B)(2), submits the herein motion and memorandum in opposition to "Defendants' Partial Motion to Dismiss."

I.    INTRODUCTION

Plaintiff perfected his right to file a civil action (hereinafter also referred to as "Complaint") by first filing an administrative complaint at the Massachusetts Commission Against Discrimination ("MCAD"), received April 26, 2002. See M.G.L. c. 151B, §§ 5 and 9.[1]

In both his administrative complaint and civil action, Adamson avers in Count I that he was subjected to race discrimination by Wyeth Pharmaceuticals ("Wyeth") and Robert Winters ("Winters") (both of whom are hereinafter collectively referred to as

---

[1] See "Defendants' Memorandum of Law in Support of Their Partial Motion to Dismiss" ("Memorandum"), Exhibit A ("Defendants' Exhibit A").

"Defendants").[2]  In Count I, he alleges that because of race (Plaintiff is an African American), Defendants have denied him and other qualified minorities employment. Likewise, in Count II, Adamson avers that he was the target of retaliation by Winters.  In Count III, Plaintiff avers that Winters aided and abetted in unlawful conduct in violation of M.G.L. c. 151B, §4(5).

On July 21, 2004, Defendants, based on diversity of jurisdiction, removed the herein Complaint from the Middlesex Superior Court Department of the Trial Court of Commonwealth of Massachusetts (C.A. no. 04-1213) to the United States District Court for the District Court, pursuant to 28 U.S.C. §§ 1441 and 1446 and LR 81.1.

On July 28, 2004, Defendants, under Fed.R.Civ.P. 12(b)(6), moved to partially dismiss Plaintiff's state claims.  As conceded by Defendants, the civil action is "similar" to the claims Plaintiff originally averred in his administrative complaint at the MCAD.[3] For reasons stated below, Plaintiff respectfully submits that contrary to Defendants' assertion otherwise, he has satisfied his legal burden of pleading timely and valid claims to withstand their motion to dismiss under Fed.R.Civ.P. 12(b)(6).  Accordingly, Defendants' motion to dismiss must be denied.

## II.   LEGAL ARGUMENT

### A.  MOTION TO DISMISS STANDARD.

The defense of a motion to dismiss based on a failure to state a claim may be made at the option of the pleader, pursuant to Fed.R.Civ.P. 12(b)(6).

The purpose of such a motion, as explained in Federal Practice and Procedure, is to:

---

[2] See Defendants' Exhibit A.

[3] See Memorandum at 1.

> [T]est the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. Thus, the provision must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief. Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6) . . .

Vol. 5A, Charles Alan Wright & Arthur R. Miller, § 1356 (2nd ed. 1990).

The legal principles underlying a plaintiff's successful challenge to this motion are summarized in Roth v. U.S., 952 F.2d 611, 613 (1st Cir. 1991). First, a civil complaint seeking money damages "should not be jettisoned for failure to state a claim unless it plainly appears that the plaintiff can prove no facts thereunder which would entitle (plaintiff) to recover." Id. citing Conley v. Gibson, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); see also Baxter v. Conte, 190 F.Supp.2d 123, 126 (D.Mass. 2001) quoting Conley v. Gibson supra at 355 U.S. 41, 45, 46 (a motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Second, in determining the legal sufficiency of a complaint, for purposes of withstanding a Fed.R.Civ.P. 12(b)(6) motion, the court "must accept as true the complaint's well-pled factual averments, excluding, however, 'bald assertions, periphrastic conclusions, or outright vituperation.'" Supra quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Third, "the court must draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." Supra quoting Miranda v. Pounce Federal Bank, 948 F.2d 41, 43 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Fourth, a complaint should not be dismissed for claims based on inartful or indefinite pleadings. Garita Hotel

3

Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17-18 (1st Cir. 1992) (notwithstanding an "inartfully drawn" complaint, sufficient facts were alleged to assert a claim against the defendant).  Lastly, a "plaintiff is obliged to set forth in [his] complaint 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Supra quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  According to Roth, if a plaintiff has succeeded in this task, dismissal under Rule 12(b)(6) will not lie.  Id.

   B. <u>PLAINTIFF'S RETALIATION CLAIMS AGAINST DEFENDANTS ARE NOT ONLY TIMELY FILED BUT MUST STAND SINCE THEY ARE REASONABLY WITHIN THE SCOPE OF THE PRIOR DISCRIMINATION CHARGE.</u>

Although retaliation is not defined in M.G.L. c. 151B, it has been "commonly used by courts as shorthand for more detailed wording of anti-discrimination statutes." See Bain v. City of Springfield, 424 Mass. 758, 678 N.E.2d 155, 160 (1997) (citations omitted). Sections 4(4) and 4(4A) of M.G.L. c. 151B speak to retaliation.  Id.; see generally Scott C. Morierarty, et al., Employment Law, Massachusetts Practice Series, vol. 45, 2nd ed., § 8.57 (2003); Lisa Cooney, Understanding and Preventing Workplace Retaliation, Massachusetts Law Review, vol. 88, no. 1, 3, n.20 (2003).  Under § 4(4), it is unlawful for a person to retaliate (i.e., "discharge, expel or otherwise discriminate against any person") because the latter has filed a complaint under this statute.  Section 4(4A) makes it unlawful "for any person to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter."  Id.

To prove retaliation without direct evidence under M.G.L. c. 151B, §4(4A), Plaintiff may establish a prima facie case by using circumstantial evidence based on the three-part burden shifting framework as set forth in McDonnell Douglas Corp. v. Green.  411 U.S.

4

972 (1973); see also Kelley v. Plymouth County Sheriff's Department, et al., 22 MDLR 208, 215 (2000).  He must show that 1) he engaged in protected activity known by the alleged retaliator, 2) he suffered an adverse employment action, and 3) a causal connection exists between the protected activity known by the retaliator and the adverse employment action.  Kelley supra.

Turning to the Complaint, contrary to Defendants' assertion otherwise, Plaintiff indeed has pled a retaliation claim against Winters under §4(4A) in his administrative charge.  Thus, without need for further analysis, Defendants' argument must fail since Plaintiff had complied with statutory provisions of the statute.  M.G.L. c. 151B, §§ 5 and 9.

Second, even assuming *arguendo* that Defendants' contention has merit, Plaintiff is not precluded from advancing a retaliation claim in his civil complaint, provided "that the retaliation is reasonably related to and grows out of the discrimination complained of to the agency . . ."  See Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 6 (1st Cir. 2001); Smith v. Mitre Corp., 949 F.Supp. 943, 948 (D.Mass. 1997) (to hold otherwise would "exalt form over substance"); Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 681 N.E.2d 1255, 1259 (Mass.App.Ct. 1997) (state appeals court opined that the above federal authority was "persuasive"); see also Ivory v. Radio One, Inc., 2002 U.S.Dist. LEXIS *6 (citations omitted) (In denying the employer's 12(b)6) motion for failure to exhaust administrative remedies, the District Court stated that "(t)he legal analysis for whether a judicial complaint may fairly be considered is within the scope of an earlier administrative charge or a reasonable investigation therefrom turns on whether 'there is a close nexus between the facts supporting each claim or whether

5

additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it'").

In Plaintiff's MCAD complaint, he averred that, in separate conversations, both he and Carl Buschmann ("Buschmann"), his immediate supervisor at Innovex Corporation (Plaintiff's employer through which he was placed on temporary assignment with Defendants), confronted Winters approximately in late March 2001 as to why Plaintiff was not considered for a permanent position.[4]  Whether and to what extent either Adamson or Buschmann, during their confrontation with Winters, engaged in protected activity by directly or indirectly discussing race as a possible barrier to Adamson being offered a pharmaceutical position at Wyeth is an area clearly to be mined in discovery. Similarly, it remains to be seen whether sufficient facts ultimately may be uncovered to further support Plaintiff's legal claim that Defendants' failure to hire him was the result of unlawful animus.[5]  More to the point, whether Defendants possessed discriminatory and/or retaliatory animus toward Plaintiff requires discovery by Plaintiff in order to provide flesh to bones of his Complaint.  Since it is reasonable to assume that such matters would have been within the scope of MCAD's purview had it fully investigated Plaintiff's allegations prior to Plaintiff's removing the administrative complaint from the MCAD to pursue a civil remedy, Plaintiff should not be barred from advancing retaliation claims in his civil action, under Clockedile supra.  Accordingly, Defendants' motion for partial dismissal must be denied under the 12(b)(6) standard.

---

[4] Supra Defendants' Exhibit A ¶13.

[5] Id. at ¶¶13-15, 18; see also Complaint ¶¶12-20, 25, 27-28.

C.  PLAINTIFF'S CLAIMS ARE TIMELY UNDER APPLICABLE STATE LAW.

Defendants' assertion that a portion of Plaintiff's claims are time-barred was unsuccessfully raised at the MCAD in a similar motion.[6]  Arguably, the matter is therefore res judicata.  Should this Honorable Court determine otherwise, Plaintiff respectfully urges the court to deny Defendants' motion nevertheless, as argued previously.

The sole basis for Defendants' motion erroneously rests on their claim that because a portion of the Complaint refers to alleged facts beyond the MCAD's six-month limitations period, Plaintiff is estopped from seeking relief on claims arising out of earlier incidents predating October 26, 2001; that is, six months prior to the date Plaintiff's administrative complaint was received by the MCAD.  In particular, Defendants seek to dismiss claims arising from Wyeth's rejection of his employment application in 1998 for a pharmaceutical representative position and its failure to consider him for district manager and other positions in March 2001.[7]  Such claims, however, are inter-related and form the basis of his claim that Defendants engaged in a long-standing pattern and practice of failing to hire qualified minorities for Wyeth's sales force.

1.  Relevant Case Law

Massachusetts case law supports Adamson's legal position that he should be allowed to pursue relief for these disputed claims since the allegations contained therein constitute a continuing violation of his civil rights and represent a pattern and practice of

---

[6]  See Plaintiff's Exhibit A.

[7]  See Defendants' Answer to Complaint ¶¶7, 11-17.

7

discriminatory hiring practices on the part of Defendants, particularly, in Winters' sales region (Area 11).

According to the MCAD regulations in effect at the time Plaintiff filed his administrative complaint, he was required to file his charge within six months after the alleged misconduct. 110 CMR 1.10(2) (effective January 1, 1999). However, Plaintiff was not barred from filing a complaint based on older events, provided that the facts alleged indicate that the "conduct complained of is of a continuing nature." Id. In both his administrative complaint and civil action, Plaintiff has satisfied the above filing requirement by alleging facts that indicate that Defendants' personnel selection practices were discriminatory, e.g., Winters' failure to diversify his region, Defendants' hiring of Caucasian employees with qualifications inferior to Plaintiff's, Defendants' repeated rejection of Plaintiff for employment.[8]

The case of Cuddyer v. Stop & Shop Supermarket Co. is on point with Plaintiff's contention that his Complaint was timely filed. 434 Mass. 521, 750 N.E.2d 928, 936-937 (Mass. 2001) (under the continuing violation theory, a plaintiff is permitted to seek damages "if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the six-month limitations period to anchor the claims"); see also Ocean Spray Cranberries, Inc. v. Massachusetts Commission Against Discrimination, et al. 441 Mass. 632, 808 N.E.2d 257, 268-269 (2004) (in an administrative appeal of an MCAD decision in favor of an employee, the Supreme Judicial Court, in discussing the "precise moment" when the limitations period runs in M.G.L. c. 151B, §5, opined that the limitations period may run once the "employer's

---

[8] See Defendants' Exhibit A ¶27; Complaint ¶¶15, 27, 31; see also n.5.

8

actions [or inactions] were sufficient either to make the . . . [employee] aware of the discrimination, or enable him to form a reasonable belief thereof").

Defendants do not dispute that Plaintiff's December 2001 failure-to-hire claim of discrimination was timely filed and within the jurisdiction of this court.[9] Thus, like Cuddyer, Plaintiff's Complaint is properly anchored by a claim that falls within the limitations period. Supra 936-938. Ultimately, Plaintiff must bear the burden of marshaling sufficient facts to prove either that the Defendants maintained a discriminatory hiring policy or practice aimed at a particular protected class of employees or committed a chain of inter-related discriminatory acts which emanated from the same unlawful animus. Under the former theory, Plaintiff must prove the continuing nature of "unlawful conduct complained of" is a systemic violation. Cuddyer supra at 936, n.12. Under the latter theory, Plaintiff must show that a "chain of similar discriminatory acts emanate(d) from the same discriminatory animus." Id.

Cuddyer dealt with a serial violation. Id. To fall within the limitations period under a continuing violation, the Cuddyer court formulated the following guiding principle to be applied by a court in deciding summary judgment based on a hostile environment claim: a plaintiff is entitled to the benefit of a continuing violation doctrine – and, hence, seek damages for claims outside the limitations period – "unless the plaintiff knew or should have reasonably known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran out." Supra at 941-942. Conversely, "where a pattern of harassment, considered from the viewpoint of a

---

[9] See Memorandum at 5.

9

reasonable person in plaintiff's position, is so sufficiently known, pervasive, and uncorrectable," plaintiff's delay in filing a seasonable complaint is inexcusable. Id. at 941. Compare Sabree v. United Broth. of Carpenters and Joiners, 921 F.2d 396, 402 (1st Cir. 1990) (since plaintiff admitted that "he believed, at every turn, that he was being discriminated against, he was barred from pursuing earlier Title VII claims, as "distinguished from a plaintiff who is unable to appreciate that he has been discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern"). With regard to the issue of a plaintiff's "awareness" of potential discrimination, Cuddyer also formulated the test more favorable to the plaintiff than the Federal "relevatory test" by allowing plaintiffs to litigate otherwise time-barred acts under M.G.L. c. 151B, depending upon plaintiff's knowledge of the hopelessness of the work environment. Supra at 942.

    2.     Discussion

Like Cuddyer, Adamson's claims are properly anchored to a timely filed administrative complaint. Unlike Cuddyer, the vast majority of Adamson's claims pertain to earlier, inter-related incidents that occurred within a span of just seven months before the limitations period began to run, as reasoned by Defendants (i.e., from March 2001 to October 26, 2001).[10] In contrast, Cuddyer's claims pertained not only to significantly older incidents, some dating back **ten** years prior her filing an MCAD complaint, but also to claims more than three years apart. Id. at 931 – 933, 935. (By comparison, Adamson's oldest claim is Wyeth's rejecting him for a pharmaceutical representative position in 1998 – four years prior to his filing an MCAD complaint, and

---

[10] Id. at 2, Complaint ¶¶12-17.

approximately three years apart from his subsequent claim of discrimination.[11])  Like his earlier claims, Adamson's Complaint is based on the charge that because of his race, the Defendants routinely excluded him from permanent employment, despite his qualifications.  Where Adamson, held out hope that, with persistence, Winters might eventually hire him for a permanent position, he never stopped seeking employment with Defendants.[12]  See Cuddyer supra at 942.  Such hope was lost after he experienced his last rejection for employment on December 18, 2001.[13]  Where it was reasonable, from an objective standard, for a contingent worker in Plaintiff's position to hold out hope that he would be offered employment at Wyeth, given his credentials and long-standing work on the Wyeth contract, it was not unreasonable for Plaintiff to delay filing an administrative complaint, particularly where he had attempted, albeit unsuccessfully to address his concerns with Defendants.[14]

　　In support of their motion, Defendants erroneously assert that, under National Railroad Passenger Corp. v. Morgan, Plaintiff is time-barred from pleading claims prior to October 26, 2001 since the Complaint does not "suggest" a hostile work environment or pattern and practice discrimination case.  536 U.S. 101, 122 S.Ct. 2061 (2002).  Rather, they maintain that the Complaint is instead comprised four discrete acts which

---

[11] See Complaint ¶¶ 7, 22.

[12] Id. ¶¶11, 13-19.

[13] Id. ¶¶20-21.

[14] Id. ¶¶10, 14, 18, 19, 21, 23.

11

make the continuing violation doctrine inapplicable to the case at bar.[15] For the reasons below, Defendants' arguments must be disregarded.

First, as an initial matter, Morgan involved an employee's appeal of summary judgment in a Title VII action. The case was brought before the United States Court of Appeals for the Ninth Circuit, and, by a grant of certiorari, to The United States Supreme Court. It involved *inter alia* employment claims of a serial nature, in which the plaintiff averred that he was "consistently harassed and disciplined more harshly than other employees on account of his race." Id. 105. Although instructive, Morgan adds little value to Defendants' dispositive motion because of the difference in procedural posture of the cases. In addition, it has no precedential authority over the District Court's interpretation and enforcement of M.G.L. c. 151B. Cf. Cuddyer supra at 939 and cases cited therein ("[i]n construing G.L. c. 151B, [the Supreme Judicial Court] frequently do[es] not follow the reasoning of the Federal appellate decisions applying Title VII, but instead affords "deference" to MCAD policies and decisions in accordance with its Legislative mandate).

Second, when the Complaint is viewed in a light most favorable to Plaintiff, the totality of circumstances – like in Morgan - suggest that Wyeth's overall employment practice was comprised of a multitude of inter-related acts that gave rise to a pattern of hostility. Supra 118. Such acts constitute an employment practice in which Defendants failed, neglected and/or deliberately refused to racially diversify Winters' region by hiring and/or promoting qualified minorities for professional positions in pharmaceutical

---

[15] See Memorandum 4-6.

sales and marketing;[16] and involved coercion, intimidation, and threats on the part of Winters which interfered with Plaintiff's rights under state law.[17] Such a practice subjected Plaintiff to loss of career advancement opportunities, embarrassment, humiliation and mistreatment; interfered with the terms and conditions of his employment;[18] as well as caused him financial and other damages.[19] In light of Morgan, Defendants are hard-pressed to credibly argue that these allegations have no bearing on Plaintiff's claim of a continuing violation. Supra 116 (humiliation and unreasonable interference with an employee's performance are examples of the types of circumstances which the Court looks to in determining whether an actionable hostile work environment exists).

Third, with respect to Defendant's claim that he has failed to plead a pattern and practice claim, Plaintiff respectfully disagrees.[20] More precisely, Plaintiff has specifically stated such a claim, but also has averred subsidiary facts to support a systemic violation claim based on Defendants' discriminatory employment hiring and promotional practices toward minorities, including the lack of racial diversity in Winters' region.[21] Under M.G.L c. 151B, the Complaint, when construed in a light most favorable to Plaintiff, provides adequate notice to Defendants of the cause of action being brought. On the other hand, were the court to find that Plaintiff has failed to enumerate such facts,

---

[16] See Complaint ¶¶27-28, 34, 38, 42.

[17] See Complaint ¶36.

[18] Id. ¶36.

[19] Id. ¶21.

[20] See Memorandum 6.

[21] See Complaint ¶¶ 12-21, 25-29.

13

Plaintiff's claim nevertheless must stand since the First Circuit no longer requires a "heightened pleading" requirement in civil rights cases. See Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 67 (2004) (in a recent case, the First Circuit rejected the heightened pleading standard in all civil rights cases, holding instead that such actions are subject to the general notice pleading requirements of Rule 8(a)).  Since the pleadings articulate a claim to which Plaintiff may be entitled to relief, Defendants' motion must therefore fail.

Finally, Plaintiff refutes Defendants' argument that his claims prior to October 26, 2001 must fail because they are substantially different and not close in time.[22]

The authority on which Defendants rely is not persuasive since none of the cases cited were decided at the appellate level, address the legal standard of a 12(b)(6) motion, involve systemic violations or are based on facts remotely similar to the ones averred in the Complaint.

Brienzo, in part, concerns a purported serial continuing violation based an employee's claim that he was discriminated against under M.G.L. c. 151B by the employer's refusal to reasonably accommodate him and allow him to return to work in 1994, 1995 and 1998. Brienzo v. Town of Acushnet, 15 Mass.L.Rep. 142; 2002 Mass. Super. LEXIS 266 at *30 (Mass.Super. August 27, 2002).  In granting summary judgment for the employer, the superior court ruled that the employee was barred from pursuing his 1994 and 1995 claims under the above doctrine since the denials were different in kind (lack of light duty work, lack of an open, full-time position and no lay off clause of the Collective Bargaining Agreement). Id. at * 33.  "Significantly," the court found that the employee

---

[22] See Memorandum 6-7.

14

had not made any intervening requests to return to work or requested any type of accommodation. Id. In contrast, Adamson's case turns on his continuously seeking permanent employment at Wyeth and at times when Defendants were actively recruiting candidates for comparable positions to Adamson's (i.e., district manager). Moreover, in that Adamson did not view his situation as hopeless until the tail end of his assignment at Wyeth, Adamson's awareness of Defendants' alleged unlawful activity excuses his delay in filing earlier complaints under Cuddyer. Supra at 942. Such was not the case, however, in Brienzo, where evidence suggested that in 1995 Brienzo was not only aware that he had been refused light duty work because none was available, but was undisputedly uninterested in such an accommodation, regardless. Supra at *34.

In citing Klaus v. Amherst Fire Department et al., Defendants argue that a span of two years between adverse actions is too long a period to infer a nexus between these events. 22 MDLR 164, 168 (2000). Klaus, however, is distinguishable from the instant matter since the majority of the salient events in Plaintiff's case occurred only seven months prior to the limitations period. But see Nassab v. Massachusetts General Hospital, 25 MDLR 429, 441 (2003) (finding that with a properly anchored complaint of gender harassment, claims spanning three years were held timely where the complainant used reasonable "step-by-step" approach in dealing with the harassment, including confronting her hostile superior about his abusiveness).

Defendants' reliance on Dubose is misplaced as well. Dubose v. Mass. Bay Transportation Authority, 24 MDLR 238, 241 (2002). In that case, the MCAD held that the complainant's unsuccessful bid for employment was untimely, since no evidence was presented at the Public Hearing to show a continuing series of events which tied that

15

discrete act with subsequent acts of discrimination. Whether sufficient facts will ultimately prove at summary judgment or trial that Plaintiff's earlier attempts to gain permanent employment are related to a continuing series of discriminatory acts and/or a systemic pattern or practice requires discovery by the parties. Where Plaintiff has sufficiently pled claims to allow for the possibility of relief, Defendants' motion must be denied.

### III.    CONCLUSION

As argued above, Defendants' motion under Fed.R.Civ.P. 12(b)(6) must be denied and that costs and a reasonable attorneys fee be awarded to Plaintiff. In the alternative, Plaintiff respectfully requests that in the event the court allows their motion, Plaintiff shall be granted leave to file an amended complaint to clarify or amplify the factual allegations and otherwise cure defects in the Complaint. See DiPerri v. FAA, 671 F.2d 54, 59 n.4 (1st Cir. 1992) (First Circuit opined that if a plaintiff "fails to initially articulate his claim with specificity. . . district courts should be liberal in granting leave to amend so that he may reformulate his claim acceptably").

### IV.    REQUEST FOR ORAL ARGUMENT

Pursuant to LR. 7.1(D), Plaintiff requests a hearing on the herein motion.

          Respectfully submitted by:

          /s/ Howard Mark Fine
          Howard Mark Fine, Esquire
          Counsel for Kenneth Adamson
          86 Sherman Street
          Cambridge, Massachusetts  02140-3233
          B.B.O. No. 554671
          617-868-9200

Dated: August 10, 2004



PLAINTIFF'S EXHIBIT A

## FAX TRANSMISSION

## COMMONWEALTH OF MASSACHUSETTS
### COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Room 601
Boston, MA 02108

(617) 994-6000
fax (617) 994-6024

To: Donald W. Schroeder, Esq.          Fax No: (617) 832-7000
    Foley Hoag, LLP

Fr: Sunila Thomas George, Esq.
    Supervisor, Attorney Assisted Unit

Dt: December 2, 2002

Re: Decision on Motion to Dismiss

   Case Name: Kenneth Adamson v. Wyeth-Ayerst Pharmaceuticals, et al
   Docket No: 02 BEM 01999

Dear Counsel;

   Enclosed, you will find the Investigating Commissioner's decision on your motion(s). Please be advised that this decision is being faxed to you, the moving party, and **you are expected to fax this decision to opposing counsel, Howard Mark Fine.**

   Respondent's Motion To Dismiss has been **DENIED** without prejudice. Respondent is required to submit a position statement asserting all jurisdictional and substantive defenses within thirty (30) days from receipt of this Order. No extensions.

   Thank you for your cooperation.

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

KENNETH ADAMSON,

    Complainant,

v.

WYETH-AYERST PHARMACEUTICALS
AND ROBERT WINTERS,

    Respondents.

Docket No. 02BEM01999

MCAD [signature]
DENIED

## RESPONDENTS' MOTION TO DISMISS

Respondents Wyeth Pharmaceuticals ("Wyeth" or the "Company") and Robert Winters ("Winters") hereby petition the Massachusetts Commission Against Discrimination to dismiss allegations contained in Paragraphs 6-15 of the Charge of Discrimination filed by Complainant Kenneth Adamson ("Adamson"). Respondents seek dismissal of these specific allegations because they were not timely filed within the six-month statute of limitations required by M.G.L. c. 151B.

WHEREFORE, for the reasons more fully explained in the accompanying Memorandum of Law, Respondents respectfully request that the Commission dismiss allegations contained in Paragraphs 6-15 of the Charge.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
_____
                                )
KENNETH ADAMSON                 )
     Plaintiff                  )
                                )
     v.                         )
                                )
WYETH PHARMACEUTICALS f/n/a     )     C.A. NO. 04-CV-11623-DPW
WYETH-AYERST PHARMACEUTICALS)
     Defendant                  )
                                )
ROBERT WINTERS                  )
     Defendant                  )
_____)
```

PLAINTIFF'S CERTIFICATE OF SERVICE

COMES now Howard Mark Fine, counsel for plaintiff Kenneth Adamson in the above-captioned matter, and hereby affirm that I have forwarded by first class mail to the defendants' counsel below Plaintiff's Motion and Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss.

        Donald W. Schroeder, Esquire
        B.B.O. 646700
        Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
        One Financial Center
        Boston, Massachusetts  02111
        617-542-6000

        Respectfully submitted by:


        /s/ Howard Mark Fine

        Howard Mark Fine, Esquire
        Counsel for Kenneth Adamson
        86 Sherman Street
        Cambridge, Massachusetts  02140-3233
        B.B.O. No. 554671
        617-868-9200

Dated: August 11, 2004