UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
KENNETH ADAMSON                     )
    Plaintiff                       )
                                    )
       v.                           )
                                    )
WYETH PHARMACEUTICALS f/n/a         )   C.A. NO. 04-CV-11623-DPW
WYETH-AYERST PHARMACEUTICALS)
    Defendant                       )
                                    )
ROBERT WINTERS                      )
    Defendant                       )
_____)

FIRST AMENDED COMPLAINT, RELIEF REQUESTED AND JURY DEMAND

INTRODUCTION

1. This cause of action seeks legal redress for unlawful and discriminatory treatment of the Plaintiff, Kenneth Adamson (hereinafter referred to as either "Plaintiff" or "Mr. Adamson") by Wyeth Pharmaceuticals f/n/a Wyeth-Ayerst Pharmaceuticals (hereinafter referred to either as "Defendant" or "Wyeth-Ayerst") and one of its managers, Robert Winters (hereinafter referred to as "Mr. Winters"). Mr. Adamson avers that but for reasons of discrimination, Wyeth-Ayerst and Mr. Winters (hereinafter collectively referred to as "Defendants") refused to hire him for a permanent managerial or other suitable professional position, despite his qualifications, due to impermissible factors attributable to his race (African American) and color (Black), in violation of M.G.L. c. 151B. The Plaintiff seeks damages and other relief for such unlawful conduct on Defendant's part, including but not limited to lost pay, loss of reputation, front pay, an award for emotional

distress, punitive damages, costs, pre-judgment interest and a reasonable attorney's fee.

## PARTIES

2. Mr. Adamson is an adult resident of Tolland, Connecticut. Mr. Adamson is African-American. At all times material herein Mr. Adamson was home-based in Ashland, Massachusetts, County of Middlesex, while working as part of Wyeth-Ayerst's contingent sales workforce and seeking permanent employment therewith.

3. Wyeth Pharmaceuticals is an international pharmaceutical company with offices in King of Prussia, Pennsylvania, and Cambridge, Massachusetts, County of Middlesex. At all times material herein, Wyeth-Ayerst did business in the Commonwealth of Massachusetts. Pursuant to the definitional section of M.G.L. c. 151B, s. 1(5), Defendant is an "employer" at all times material herein.

4. Mr. Robert Winters is an adult of Bryn Mawr, Pennsylvania and an employee of Wyeth-Ayerst. At all times material to this complaint, Mr. Winters was Mr. Adamson's Manager in "Area 11" during Mr. Adamson's job assignment with Wyeth-Ayerst as described more fully below. Mr. Winters is Caucasian.

## JURISDICTION

5. Jurisdiction is conferred upon this Honorable Court pursuant to M.G.L. c. 151B, § 9.

## FACTS

6. At the time Mr. Adamson sought permanent employment as a district manager, he had more than thirteen years professional sales, marketing and training experience

in the pharmaceutical industry, of which more than two years had been in a managerial capacity. Throughout his career, he has achieved recognition from his employers as a leader in his profession and has earned numerous awards for his high level of performance.

7. In early 1998, or thereabout, Mr. Adamson interviewed with Wyeth-Ayerst for a pharmaceutical representative position, which, at the time, would have been a lateral career move. Despite being well qualified for the position, Defendant rejected his application.

8. Since July 1999 to the present date, Plaintiff has been employed by Innovex Corporation (hereinafter referred to as "Innovex"). Innovex is a global corporation that provides sales and marketing services to pharmaceutical and biotech companies.

9. At all times material herein, Plaintiff's immediate supervisor at Innovex was Carl Buschmann.

10. At all times material herein, Innovex temporarily assigned Mr. Adamson to provide full-time, on-site services for one of its major clients, Wyeth-Ayerst Pharmaceuticals. Initially, Mr. Adamson worked as a territory representative on Innovex's contract with Wyeth-Ayerst. Shortly thereafter, he was promoted to area field trainer. A few weeks later, he was promoted again to district manager, in which he was responsible for recruiting, training and otherwise supervising the activities of a northeast regional sales force primarily in Massachusetts and Rhode Island under the aforementioned Wyeth-Ayerst contract. Plaintiff at all material times herein reported directly to and received supervision from Mr. Winters.

11. In January 2001, or thereabout, Plaintiff notified Wyeth-Ayerst and Innovex that he was interested in joining Wyeth-Ayerst as either a district manager or in a marketing position.

12. In March 2001, or thereabout, several district manager positions opened up at Wyeth-Ayerst without either Wyeth-Ayerst or Innovex notifying him. Unbeknownst to Plaintiff at the time was the fact that Mr. Winters was actively interviewing candidates for district manager positions in order to expand the Defendant's sales force in April 2001.

13. Upon learning about these opportunities, Plaintiff once again informed Defendant of his interest in job openings for district manager and marketing positions.

14. In late March 2001, or thereabout, Mr. Adamson and Carl Bushmann confronted Mr. Winters on why he had not considered Plaintiff for these positions. In separate conversations with Plaintiff and Carl Buschmann, Mr. Winters stated that he did not grant Plaintiff an interview because he purportedly assumed – without any foundation in fact - that Plaintiff would not make a two-year commitment to the northeast region (that is, Area 11). According to Mr. Buschmann, Mr. Winters stated that he did not have any problems with Plaintiff's performance and would consider him for future openings.

15. Defendants hired two other Innovex employees for district manager positions as part of the April 2001 workforce expansion other than Plaintiff. In each case, the employees hired were Caucasian and had qualifications inferior to Plaintiff's.

16. Around late March 2001, or thereabout, Defendant's Strategic Staffing department in Philadelphia, Pennsylvania interviewed Mr. Adamson for an area

4

marketing position. As before, Defendant rejected his bid for permanent employment for no apparent reason. Based on Plaintiff's information and belief, Defendant sought to fill the position with an Innovex Manager, if possible.

17. On September 6, 2001, Plaintiff met at length with Mr. Winters to discuss business matters in Plaintiff's district. At one point, Plaintiff queried Mr. Winters on the prospect of permanently joining the latter's team as a manager. Mr. Winters was angered by Mr. Adamson's inquiry and responded by revealing for the first time that he was allegedly dissatisfied with Plaintiff's performance.

18. The Wyeth-Ayerst contract was scheduled to end in February 2002 or thereabout. Shortly before the contract was completed, Mr. Adamson once again expressed to Mr. Winters his interest in career opportunities at Wyeth-Ayerst. In particular, Mr. Adamson indicated that his initial preference was to continue working as a district manager in the northeast region. Alternately, he stated that he would consider other geographical areas or a suitable position in marketing. In December 2001, or thereabout, Mr. Adamson was granted an interview for a district manager position – the same position that he had been performing for Wyeth-Ayerst under Mr. Winters for the past two or so years.

19. At the end of 2001, Plaintiff also expressed to Defendant's Human Resources Department an interest in relocating and working temporarily as a representative – a lower level position – as a possible way of being positioned to advance to other, more suitable opportunities with Defendant. Shortly thereafter, Plaintiff was contacted by Mr. Winters who told him that an interview for a representative position in Area 11 could be arranged, if desired.

20. In a letter dated December 18, 2001, Wyeth-Ayerst's Director of Strategic Staffing formally notified Mr. Adamson that he was rejected for the district manager position.

21. Given this latest rejection and his history of unsuccessful attempts of gaining permanent employment with Wyeth-Ayerst, Mr. Adamson withdrew his bid for a representative position, believing that such a pursuit would be an unwise career decision since the position would be a significant demotion. In addition, Mr. Adamson felt that pursuing and even securing a lower level position, especially under Mr. Winters, would in any event lead ultimately to further embarrassment, humiliation and mistreatment.

22. On or about April 26, 2002, Plaintiff filed an administrative complaint of discrimination with the Massachusetts Commission Against Discrimination (docket no. 02BEMO1999).

23. Prior to filing his administrative complaint, Mr. Adamson, in good faith, attempted to informally resolve his dispute with Defendant, but to no avail.

24. On February 26, 2004, the Massachusetts Commission Against Discrimination dismissed the complaint without prejudice in order for Plaintiff to pursue a civil action in superior court, pursuant to M.G.L. c. 151 B, § 9.

25. At all times material herein, Plaintiff was and remains well qualified for the positions he applied to at Wyeth-Ayerst.

26. At all times material herein Plaintiff performed his duties at Wyeth-Ayerst and Innovex in a competent and more than adequate manner.

27. At all times material herein, the Defendants have failed, neglected and/or deliberately refused to racially diversify Mr. Winter's region (Area 11).

28. Based on information and belief, Plaintiff contends that Defendant and/or Mr. Winters have engaged in a pattern and practice of failing to hire and/or promote African American and other qualified minorities for professional positions in pharmaceutical sales and marketing.

29. Defendant and Mr. Winter's reasons for failing to hire Plaintiff for permanent employment are based on impermissible factors attributable to Plaintiff's race, in violation of M.G.L. c. 151B.

COUNT I: RACE DISCRIMINATION
M.G.L. c. 151B, s. 4(1)
(Defendants)

30. Plaintiff realleges and reavers the facts and allegations as set forth in paragraphs 1 to 29 as if specifically set forth herein.

31. Plaintiff has suffered and continues to suffer adverse personnel actions as a direct result of Defendants' ongoing and continuous failure to hire Plaintiff and other qualified minorities for permanent positions.

32. The circumstances resulting in Plaintiff's employment dispute with Defendants give rise to the inference that adverse actions he has suffered were due to unlawful discrimination in violation of state law.

33. The acts of Defendants are directly related to the damages sustained by Plaintiff for the unlawful actions as set forth herein, including but not limited to consequential and other related damages.

34. As a direct consequence of Defendants' unlawful conduct, Plaintiff has incurred financial damages, emotional distress and other related damages.

COUNT II: AIDING AND ABETTING
M.G.L. c. 151B, s. 4(5)
(Robert Winters)

35. Plaintiff realleges and reavers the facts and allegations as set forth in paragraphs 1 to 34 as if specifically set forth herein.

36. The actions of Mr. Winters, as described above, were intended to aid, abet, incite, compel and/or coerce Defendant to interfere with Plaintiff's exercise and enjoyment of his legal rights under state law.

37. The actions of Mr. Winters are directly related to the damages sustained by Plaintiff for the unlawful actions as set forth herein, including but not limited to consequential and other related damages.

38. As a direct consequence of Defendants' unlawful conduct, Plaintiff has incurred financial damages, emotional distress and other related damages.

JURY TRIAL

39. Plaintiff requests a jury trial on all counts pled.

RELIEF

40. Plaintiff prays that this Honorable Court grant him the following relief:

    a. Award of damages sufficient to compensate him for his loss of earnings and benefits, past and future, for his mental anguish and suffering, and related damages;

    b. Award of reasonable attorney's fee, costs, statutory interest and any other relief to which Plaintiff is entitled under M.G.L. c. 151B, s. 5; and

8

    c.  Grant any all other relief as this Honorable Court deems just and proper.

    Respectfully submitted by:

/s/ Howard Mark Fine
Howard Mark Fine, Esquire
Counsel for Kenneth Adamson
86 Sherman Street
Cambridge, Massachusetts  02140-3233
B.B.O. No. 554671
617-868-9200

Dated: September 8, 2004

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| KENNETH ADAMSON ) | |
|     Plaintiff ) | |
| ) | |
|     v. ) | |
| ) | |
| WYETH PHARMACEUTICALS f/n/a ) | C.A. NO. 04-CV-11623-DPW |
| WYETH-AYERST PHARMACEUTICALS) | |
|     Defendant ) | |
| ) | |
| ROBERT WINTERS ) | |
|     Defendant ) | |
| _____) | |

## PLAINTIFF'S CERTIFICATE OF SERVICE

    COMES now Howard Mark Fine, counsel for plaintiff Kenneth Adamson in the above-captioned matter, and hereby affirm that I have forwarded by first class mail to the defendants' counsel below Plaintiff's First Amended Complaint, Relief Requested, and Jury Demand.

    Donald W. Schroeder, Esquire
    B.B.O. 646700
    Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
    One Financial Center
    Boston, Massachusetts  02111
    617-542-6000

    Respectfully submitted by:

    /s/ Howard Mark Fine
    Howard Mark Fine, Esquire
    Counsel for Kenneth Adamson
    86 Sherman Street
    Cambridge, Massachusetts  02140-3233
    B.B.O. No. 554671
    617-868-9200

Dated: September 8, 2004